UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**JEANETTE YVONNE HOBBS,**

        **Plaintiff,**

        v.                                       Case No. 19-CV-705

**ANDREW M. SAUL,**
**Commissioner of the Social Security Administration,**

        **Defendant.**

---

## DECISION AND ORDER

---

**1. Introduction**

Plaintiff Jeanette Hobbs alleges that she has been disabled since October 16, 2015. (Tr. 15.) She seeks a period of disability and disability insurance benefits, supplemental security income, and disabled widow's benefits. After Hobbs's application was denied initially (Tr. 93-165) and upon reconsideration (Tr. 172-228), a hearing was held before an administrative law judge (ALJ) on February 26, 2018 (Tr. 46-90). On July 17, 2018, the ALJ issued a written decision concluding that, prior to May 7, 2017, Hobbs was not disabled, but she became disabled on that date. (Tr. 15-33.) After the Appeals Council denied Hobbs's request for review on March 15, 2019 (Tr. 1-4), she filed this action (ECF No. 1).

All parties have consented to the full jurisdiction of a magistrate judge (ECF Nos. 4, 6) and this matter is ready for resolution.

**2. ALJ's Decision**

In determining whether a person is disabled an ALJ applies a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step one, the ALJ determines whether the claimant has engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). The ALJ found that Hobbs "has not engaged in substantial gainful activity since the alleged onset date[.]" (Tr. 18.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c). An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). The ALJ concluded that Hobbs has the following severe impairments: "degenerative disc disease of the cervical and lumbar spine; chronic obstructive pulmonary disease (COPD); bilateral carpal tunnel syndrome (CTS); depression; and anxiety[.]" (Tr. 18.)

At step three the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (called "the listings"), 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, 416.920(a)(4)(iii), 416.925. If the impairment or

2

Case 2:19-cv-00705-WED    Filed 07/21/20    Page 2 of 15    Document 23

impairments meets or medically equals the criteria of a listing and also meets the twelve-month durational requirement, 20 C.F.R. §§ 404.1509, 416.909, the claimant is disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairment or impairments is not of a severity to meet or medically equal the criteria set forth in a listing, the analysis proceeds to the next step. 20 C.F.R. §§ 404.1520(e), 416.920(e). The ALJ found that "[s]ince the alleged onset date of disability, October 16, 2015, [Hobbs] has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]" (Tr. 18.)

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), which is the most the claimant can do despite her impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a). In making the RFC finding the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). In other words, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p. The ALJ concluded that

> prior to May 7, 2017, the date [Hobbs] became disabled, [Hobbs] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: she may not climb ladders, ropes, or scaffolds; she may occasionally stoop or crouch; she may frequently handle and finger with the bilateral upper extremities; she requires a cane for ambulation; she may never work at unprotected heights or with dangerous moving machinery; she should not be required to drive a vehicle as a job task; she should avoid concentrated exposure to fumes, dusts, odors, gases, or similar pulmonary irritants; she should avoid concentrated exposure [to] extreme heat or cold; she is able to understand, remember, and carry out simple instructions; she

is able to perform work requiring only occasional work-related decision-making and occasional changes in the work setting; she may occasionally interact with co-workers and the public.

(Tr. 20-21.) The ALJ then concluded that

beginning on May 7, 2017, [Hobbs] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(a) except: she may not climb ladders, ropes or scaffolds; she may occasionally stoop or crouch; she may occasionally handle and finger with the bilateral upper extremities; she requires a cane for ambulation; she may never work at unprotected heights or with dangerous moving machinery; she should not be required to drive a vehicle as a job task; she should avoid concentrated exposure to fumes, dusts, odors, gases, or similar pulmonary irritants; she should avoid concentrated exposure [to] extreme heat or cold; she is able to understand, remember, and carry out simple instructions; she is able to perform work requiring only occasional work-related decision-making and occasional changes in the work setting; she may occasionally interact with co-workers and the public.

(Tr. 27-28.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560, 416.920(a)(4)(iv), 416.960. Her past relevant work was as a hospital housekeeper. (Tr. 28.) The ALJ concluded that "[s]ince October 16, 2015, [Hobbs] has been unable to perform any past relevant work[.]" (*Id.*)

The last step of the sequential evaluation process requires the ALJ to determine whether the claimant is able to do any other work, considering her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c), 416.920(a)(4)(v), 416.960(c). At this step, the ALJ concluded that "[p]rior to May 7, 2017, considering

[Hobbs's] age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that [Hobbs] could have performed[.]" (Tr. 29.) In reaching that conclusion, the ALJ relied on testimony from a vocational expert (VE), who testified that a hypothetical individual of Hobbs's RFC, age, education and work experience could perform the requirements of electrical accessory assembler, industrial bagger, and data entry clerk. (Tr. 30.) After finding Hobbs could perform work in the national economy, the ALJ concluded that she was not disabled prior to May 7, 2017. (Tr. 32.)

The ALJ then concluded that, "[b]eginning on May 7, 2017, considering [Hobbs's] age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that [Hobbs] can perform[.]" (Tr. 32.) Therefore, the ALJ concluded that "[Hobbs] was not disabled prior to May 7, 2017, but became disabled on that date and has continued to be disabled through the date of this decision[.]" (*Id.*) She was considered disabled for purposes of her applications for period of disability and disability insurance benefits and supplemental security income but not disabled for purposes of her application for disabled widow's benefits. (*Id.*)

### 3. Standard of Review

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (citing 42 U.S.C.

§ 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'" *L.D.R. by Wagner*, 920 F.3d at 1152 (quoting *Elder*, 529 F.3d at 413).

4. **Analysis**

Hobbs appealed the ALJ's determination that she was not disabled prior to May 7, 2017. (ECF No. 15 at 1.) Hobbs argues that the ALJ made two errors: (1) she improperly rejected Dr. Hamed's opinion regarding Hobbs's pulmonary function test and gave more weight to the state agency medical consultants; and (2) she did not properly consider her limitations in concentration, persistence, and pace. (*Id.* at 12-20.)

**4.1. Treating Pulmonologist Dr. Raed Hamed**

"Under 20 C.F.R. § 404.1527(c), a treating source's opinion should receive controlling weight if it is well supported by medically acceptable clinical techniques and not inconsistent with other substantial evidence in the record." *Stepp v. Colvin*, 795 F.3d

711, 719 (7th Cir. 2015). "If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion" to determine how much weight to give the opinion. *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009) (citing 20 C.F.R. § 404.1527(c)(2); *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008); *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996)).

Generally, "more weight [is given] to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist." 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5). While "[a]n ALJ must offer good reasons for discounting a treating physician's opinion," *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (internal quotations and citation omitted), courts will uphold "all but the most patently erroneous reasons for discounting [the treating physician's] opinion." *Stepp*, 795 F.3d at 718 (quoting *Luster v. Astrue*, F. App'x 738, 740 (7th Cir. 2010) (unpublished)).

On June 29, 2016, Hobbs first visited pulmonologist Dr. Raed Hamed. (Tr. 1189-90.) Dr. Hamed ordered that Hobbs undergo some pulmonary function testing (Tr. 1190), which testing occurred in July 2016 (Tr. 1210). The testing showed mild obstructive lung disease, moderate to severe airtrapping, and severe decreased diffusion capacity. (Tr.

1199, 1210.) Dr. Hamed opined that "[t]he pulmonary function test is likely consistent with COPD." (*Id.*)

In February 2018 Dr. Hamed completed an untitled form on which he identified Hobbs's exertional level as sedentary (as opposed to either light or medium, the other choices on the form). (Tr. 1209.) The form had no space for any elaboration of that finding and none was given. (*Id.*)

The ALJ referenced pulmonary function testing in her decision, stating it "was consistent with COPD, with Spirometry showing mild obstructive lung disease, evidence of moderate-to-severe airtrapping, and decreased diffusion capacity[.]" (Tr. 22.) Hobbs argues that the ALJ misconstrued Dr. Hamed's findings because Dr. Hamed said Hobbs has a "severe decrease" in diffusion capacity, whereas the ALJ merely said she had a "decrease." (ECF No. 15 at 14.) However, the court finds this distinction to be harmless.

The ALJ gave "partial weight" to Dr. Hamed's February 2018 opinion that she could perform sedentary work, explaining:

> [Dr. Hamed] is a specialist in pulmonology, who has had the opportunity to observe and examine [Hobbs] on several occasions since July 2016[.] Although the undersigned agrees with Dr. Hamed insofar as [Hobbs's] diagnosed COPD causes physical limitations, the restriction to sedentary exertion is not consistent with his treatment notes from August 2016 through October 2017 treatment notes, documenting mild symptoms reported by [Hobbs] and corresponding generally benign examination findings[.] The [pulmonary function tests] serving as the basis of his opinion were performed more than 18 months before his opinions were rendered, and his more recent treatment notes show [Hobbs's] functioning consistently improved as she reduced her smoking frequency, confirmed by [her] testimony at the hearing[.] Thus, when considering the age of the

> testing performed, treatment notes documenting [Hobbs's] reported improvement in functioning, mild clinical findings, benign symptomatology, and absence of COPD exacerbations, the limitation to sedentary work is therefore unwarranted.

(Tr. 26 (internal citations omitted).)

Dr. Hamed's August 2016 treatment note states that Hobbs "is short of breath after two blocks" and that she smokes one cigarette per day (Tr. 1188); the November 2016 note states she "is short of breath after a block, occasional cough and occasional wheezing" and smokes five cigarettes per day (Tr. 1187); in March 2017 Hobbs told Dr. Hamed that "she is short of breath after 2 blocks," and he again told her to quit smoking (Tr. 1186); and in October 2017 she reported to Dr. Hamed that "she is short of breath after 2-3 blocks" and smokes one cigarette per day (Tr. 1183). Her COPD was often characterized as "mild" and "stable without exacerbation (Tr. 1183, 1185-86) and called "moderate" in August 2016 (Tr. 1188).

Essentially the ALJ discounted Dr. Hamed's opinion on the ground that it is based on the pulmonary function test from 2016, subsequent to which Dr. Hamed's notes show that Hobbs's condition was improving. However, Dr. Hamed stated that his opinion was "[b]ased upon [his] clinical evaluations and the pulmonary function testing." (Tr. 1209.) So, notwithstanding what his evaluation notes state, as of February 2018 he was still of the opinion that Hobbs was only capable of sedentary work. *See* 20 C.F.R. §§ 404.1527(c)(2)(i), 416.927(c)(2)(i) ("Generally, the longer a treating source has treated

9

Case 2:19-cv-00705-WED   Filed 07/21/20   Page 9 of 15   Document 23

you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion.").

Instead of following Dr. Hamed's opinion that Hobbs should be limited to sedentary work, the ALJ gave "significant weight" to the opinions of the state agency medical consultants Syd Foster, D.O. and George Walcott, M.D., both of whom opined that Hobbs was capable of light work. (Tr. 164, 189.) They rendered their opinions in February 2016 (Tr. 165) and September 2016 (Tr. 190), respectively. The ALJ explained,

> State agency medical consultant Syd Foster, D.O. determined [Hobbs] could perform light work, with a limitation to avoid exposure to heights and hazards due to symptoms from hypertension. Upon reconsideration, George Walcott, M.D. essentially affirmed Dr. Foster's conclusions, but limited [Hobbs] to occasional stooping and removed the environmental limitation as her hypertension was now adequately controlled. State agency consultants have specialized knowledge in evaluating mental and physical health symptoms/impairments under the standards of the Social Security Act, and their opinions are given significant weight. They are generally consistent with the medical evidence of record. The records show [Hobbs's] hypertension and associated symptoms came under control once she was compliant with taking her medications, and has minimal symptoms from COPD with improved functioning. Their opinions are also consistent with reasonably good physical functioning exhibited during examinations and mild findings with diagnostic imaging. However, given [Hobbs's] diagnosis of COPD treated with inhalers and reported seasonal symptoms, additional environmental limitations have been imposed.

(Tr. 26 (internal citations omitted).)

Hobbs argues that the ALJ erred by giving these opinions "significant weight" because the state agency consultants did not consider Dr. Hamed's treatment notes or her pulmonary function test results when formulating their opinions. (ECF No. 15 at 18.) The

testing occurred in July 2016 (Tr. 1199, 1210), after Dr. Foster's opinion. Even though the testing was conducted before Dr. Walcott rendered an opinion, there is no indication he was aware of the testing or considered the test results in formulating an opinion, *see* Tr. 211-13. "ALJs may not rely on outdated opinions of agency consultants 'if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion.'" *Lambert v. Berryhill*, 896 F.3d 768, 776 (7th Cir. 2018) (quoting *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018)). It is possible that the state agency consultants may have come to different conclusions if they had the results of the pulmonary function testing and Dr. Hamed's opinion. Therefore, the ALJ erred by giving more weight to their opinions than to Dr. Hamed's.

Accordingly, the ALJ has not supported his reasons for discounting Dr. Hamed's opinion with substantial evidence. On remand, the ALJ shall reevaluate Dr. Hamed's opinion in light of the relevant evidence in the record. If the ALJ decides that his opinion is not entitled to controlling weight, he shall give good reasons supported by the record for discounting it.

**4.2. Concentration, Persistence, and Pace**

It is well established that "[b]oth the RFC and the hypothetical question presented to a VE must incorporate the 'totality of a claimant's limitations,' including any 'deficiencies of concentration, persistence and pace.'" *Mischler v. Berryhill*, 766 F. App'x 369, 375 (7th Cir. 2019) (unpublished) (quoting *O'Connor-Spinner v. Astrue*, 627 F.3d 614,

619 (7th Cir. 2010)). "The ALJ need not use this exact terminology, so long as the phrasing 'specifically exclude[s] those tasks that someone with the claimant's limitations would be unable to perform.'" *Id.* (quoting *O'Connor-Spinner*, 627 F.3d at 619) (alteration in original).

Hobbs argues that the ALJ failed to analyze all of her impairments in combination with regards to maintaining concentration, persistence, and pace. (ECF No. 15 at 18-20.) The ALJ found that Hobbs had a moderate limitation in concentrating, persisting, or maintaining pace, explaining:

> [Hobbs] reports hearing voices that cause difficulty concentrating, that she can pay attention for 30 minutes at a time, and does not finish things she starts[.] [Hobbs] further reports that side effects from her medications make her drowsy and result in decreased concentration ability[.] However, she demonstrates a reasonable ability to initiate a task and see it through to completion. For example, at her consultative psychological evaluation, she was able to perform simple calculations with addition, subtraction, and multiplication (although the answer itself was incorrect) and could recall a string of numbers forwards and in reverse[.] Furthermore, [Hobbs's] mental health provider noted intact attention and concentration upon mental status examination[.] While [Hobbs] may at times experience reduced abilities in this area, they are not shown to be more than moderately limiting.

(Tr. 20 (internal citations omitted).)

Hobbs argues that her "efficiency was impaired by both mental *and* physical factors; and the state agency psychologists were accounting for only the mental drags, not on the physical slowness caused by [her] pulmonary disorder." (ECF No. 22 at 7 (emphasis in original).) She argues that the "ALJ needed to consider both the productivity

12
Case 2:19-cv-00705-WED    Filed 07/21/20    Page 12 of 15    Document 23

loss caused by her depression/anxiety and the productivity loss caused by her difficulty in absorbing oxygen into her bloodstream in combination." (*Id.*) Hobbs argued this in her post hearing brief to the ALJ, stating that, due to decreased pulmonary function, she can only walk about 1.7 miles per hour whereas the typical pace for a healthy adult is 2.5 miles per hour. (Tr. 552.) She argues that she can maintain such pace for only "short increments," and "[t]his corresponds with Dr. Hamed's conclusion that [she] cannot maintain work at the light exertional level, and because of the significant effect this condition will have on her pace, she will not be able to maintain acceptable levels of concentration, persistence and pace once her other conditions are taken into account." (*Id.*)

In response to this argument the ALJ stated,

> [W]hile attorney Angermeier argues [Hobbs's] reduced walking speed demonstrated during a physical therapy evaluation renders her unable to perform work at the light exertional level, he cites no evidence correlating [Hobbs's] reduced walking speed with the inability to perform light work[.] Moreover, he appears to conflates [sic] [Hobbs's] physical pace with <u>mental</u> health limitations of concentration, persistence or pace.

(Tr. 25 (internal citations omitted) (emphasis in original).) Hobbs contends that the ALJ did not respond to her argument and that the "the ALJ mistakenly believed that it was improper to consider mental and physical efficiency issues in combination." (ECF No. 22 at 7-8.)

Hobbs never explains what additional limitations the ALJ should have included in the RFC assessment. Hobbs just states that she should have also considered how her

13

physical impairments would impact her pace. The Commissioner agrees with the ALJ and argues that Hobbs did not "articulate any error in the ALJ's reasoning on this point." (ECF No. 21 at 21-22.)

The court agrees with the ALJ that Hobbs is conflating mental and physical pace. Limitations regarding concentration, persistence, or pace are mental limitations and include actions such as an ability to carry out short and simple instructions or an ability to make simple work-related decisions. Someone who physically walks slow does not necessarily perform job duties at a slower pace. Although Hobbs argues she suffers from additional "productivity loss caused by her difficulty in absorbing oxygen into her bloodstream," she presented to the ALJ her own research on this issue, rather than the finding of any treating or examining source. (Tr. 560-70.)

Hobbs withdrew her other arguments in her reply brief. (*See* ECF No. 22 at 6-7 ("Under *Burmester [v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019)], the Commissioner is correct that the ALJ's decision to accept the nonexamining psychologist's opinion that Mrs. Hobbs' issues with concentration would not be work-preclusive survives under a deferential appellate standard.") (footnote omitted).) Therefore, the court finds that the ALJ did not err in formulating the RFC assessment.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is **reversed**, and pursuant to 42 U.S.C. § 405(g), sentence four, this matter is **remanded** for further rulings consistent with this decision. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 21st day of July, 2020.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge